**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Jerges Enrique Delepiani Olivero,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 26-13625-NMG** |
| **v.** | ) | |
| **Antone Moniz, et al.,** | ) | |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

In his petition for writ of habeas corpus (Docket No. 1), petitioner Jerges Enrique Delepiani Olivero ("Delepiani Olivero" or "petitioner") contends that he is being detained by respondents Antone Moniz and other named respondents ("respondents") in violation of his due process rights. He avers that at his bond hearing, the Immigration Judge ("IJ") did not comport with due process standards when she found him a flight risk and denied his request for bond. Respondents ask the Court to deny the petition because 8 U.S.C. §1226(e) prohibits judicial review of the IJ's bond decision and for petitioner's failure to exhaust administrative remedies. For the reasons that follow, the petition will be allowed, in part, and denied, in part.

## I. <u>Facts</u>

Delepiani Olivero is a native and citizen of Venezuela. In 2012, 2013, and 2016, he traveled to and from the United States on a B2 visitor visa. In 2018, petitioner entered the United States on his B2 visa and did not depart after it expired. Petitioner resided in Irving, Texas, and timely filed an asylum application with United States Citizenship and Immigration Services ("USCIS"). Thereafter, Delepiani Olivero obtained Temporary Protected Status ("TPS") and legally worked while awaiting adjudication of his asylum application. Delepiani Olivero has no criminal history. He works for a company based in Cape Coral, Florida, where he installs audio and visual systems for Amazon fulfillment centers in different parts of the country. That job requires Delepiani Olivero to travel to different states. In 2025, his TPS was terminated by the government.

On July 10, 2026, Delepiani Olivero was arrested by Immigration and Customs Enforcement ("ICE") officers at Logan Airport while traveling from Boston to Florida. ICE detained him at the Plymouth County Correctional Facility ("PCCF"). Soon thereafter, he received a bond hearing in the Immigration Court in Chelmsford, Massachusetts.

At the bond hearing, petitioner presented evidence of his lawful work history, identification documents, and ties to the community. Petitioner's counsel also submitted a letter from Delepiani Olivero's employer in Florida, offering to be petitioner's bond sponsor and providing him with a permanent address at which to reside and continue his employment. Further, Delepiani Olivero's employer committed to supporting him financially as needed and to help him attend future proceedings.

The evidence petitioner provided at the hearing included his Venezuelan passport, Texas driver's license, U.S. visa, I-94, Employment Authorization documents, and several letters of support from U.S. citizens attesting to his character.

In turn, the Department of Homeland Security ("DHS") submitted a single document, an I-213 Form, which narrated the events of petitioner's ICE arrest at Logan Airport and his immigration history. That report confirmed that petitioner has no criminal record and indicated that he was cooperative throughout the detention process. DHS took the position, based on the fact that petitioner had overstayed his visa period, that he was a potential flight risk.

The IJ agreed with DHS and denied bond based on her determination that DHS had proven that petitioner was a flight risk by a preponderance of the evidence. The IJ explained that

she based her decision on the following factors: petitioner had entered and departed from the United States multiple times on a B2 visa; relief for petitioner was tenuous because his asylum claim had not yet been adjudicated and his return to his home country before seeking asylum undermined his claimed fear of persecution; and it was uncertain where petitioner would reside, given that he previously lived in Texas while his sponsor and employer were in Florida.

Petitioner filed the present petition for writ of habeas corpus contending that the hearing did not comport with due process standards. Specifically, he maintains that the IJ did not address why 1) his ties to the community, including detailed letters from individuals who have known him for decades, 2) a permanent address, 3) fixed and lawful employment, 4) eligibility for relief from removal, 5) repeated compliance with USCIS requirements and 6) a U.S. citizen sponsor and employer were insufficient to mitigate flight risk concerns. Petitioner also contends that the IJ improperly based her decision on the speculative nature of his asylum claim without having reviewed it, and that the IJ had unfounded concerns about his ability to secure a new residence in Florida and his frequent travel for work. Finally, petitioner argues that his bond hearing was deficient because the IJ failed to explain why

there were no alternatives to detention that could ameliorate the risk of flight and ensure his court attendance.

## II. Analysis

### a. Exhaustion

Respondents argue that the Court should deny the petition because Delepiani Olivero has failed to exhaust his administrative remedies by appealing the bond denial to the Board of Immigration Appeals ("BIA"). As respondents acknowledge, because there is no applicable statutory exhaustion requirement, the common-law exhaustion standard applies. That standard is more permissive and "cedes discretion to a court to decline the exercise of jurisdiction." Brito v. Garland, 22 F.4th 240, 255-56 (1st Cir. 2021) (internal quotations omitted).

Administrative exhaustion of remedies

> serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency, and, thus, should customarily be enforced.

Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (internal quotations omitted). There are, however, circumstances in which "the interests of the individual weigh heavily against requiring administrative exhaustion." McCarthy v. Madigan, 503 U.S. 140, 146 (1992).

Of relevance here, one such circumstance exists where a "particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." Id. at

147. Irreparable harm may be found when a petitioner is incarcerated or detained pending the exhaustion of administrative remedies. See Brito, 22 F.4th at 256 ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest").

Respondents contend that excusing exhaustion of remedies is unwarranted but they fail to provide any support for that contention. Absent habeas relief, Delepiani Olivero will remain detained pending the appeal to the BIA, which, as petitioner notes, could drag on for as long as six months. Such a prolonged and indefinite period of allegedly unlawful incarceration would cause irreparable harm to petitioner. That conclusion is consistent with similar cases brought against the government in the First Circuit. See, e.g., Miti v. Moniz, 2026 WL 884639, at *5 (D. Mass. Mar. 31, 2026); Picado v. Hyde, 2026 WL 352691, at *5-6 (D.R.I. Feb. 9, 2026). As such, the Court will not require exhaustion of administrative remedies in this case.

**b. Due Process**

1. Legal Standard

Before reaching the merits of the petition, the Court will address the question of jurisdiction. Although 8 U.S.C. §1226(e) insulates an IJ's discretionary judgment from judicial

review, constitutional challenges to detention are not barred by that provision. See Hernandez-Lara v. Lyons, 10 F.4th 19, 33-34 (1st Cir. 2021). As relevant here, to raise such a challenge, petitioner must

> either point to the language of the immigration judge's ruling indicating she applied the wrong standard of proof or demonstrate that the evidence itself could not -- as a matter of law -- have supported the immigration judge's decision to deny bond.

Ganzhi v. Moniz, 2026 WL 1194941, at *1 (D. Mass. May 1, 2026) (internal quotations omitted).

Under the latter approach, the Court may not grant relief simply because it disagrees with the IJ's weighing of the evidence. Nucamendiz v. Hyde, 2026 WL 221449, at *2 (D. Mass. Jan. 28, 2026). Rather, habeas relief is appropriate only if the IJ's decision to deny bond was "so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 144 (D. Mass. 2019). Put differently, petitioner must establish

> not only that his [IJ] erred but that, under the circumstances, no reasonable [IJ] could have come to the same conclusion.

Miti, 2026 WL 884639, at *6.

2. Discussion

The transcript of the bond hearing and the accompanying order make clear that the IJ properly identified the applicable standard, i.e., the government needed to prove by a

preponderance of the evidence that petitioner is a flight risk. Petitioner was therefore required to demonstrate that the evidence itself could not have supported the decision to deny bond or that the IJ's process was constitutionally deficient.

As to the IJ's weighing of the evidence, the Court is skeptical about several of the reasons articulated for denying bond. As discussed above, in concluding that petitioner was a flight risk, the IJ relied on the following findings: petitioner entered and departed from the United States multiple times on a B2 visa; granting relief for petitioner was, in the IJ's view, speculative because he had returned to his home country before seeking asylum thereby undermining his claim of fear of persecution; and uncertainty as to where petitioner would reside.

Those reasons, taken individually and together, are difficult to reconcile with the record. First, that petitioner previously entered and departed the United States pursuant to a B2 visa demonstrates consistent compliance with immigration procedures rather than evasion. Moreover, the speculative nature of petitioner's unadjudicated asylum claim, standing alone, has little bearing upon flight risk. Finally, any uncertainty about where petitioner would reside was resolved when the employer explained the necessity for his travel,

offered a permanent Florida address and committed to ensuring that petitioner would attend future immigration proceedings.[1]

That said, the Court is mindful that it may not grant habeas relief simply because it disagrees with the IJ's weighing of the evidence. See Nucamendiz, 2026 WL 221449, at *2. The Court therefore declines to rest its decision on the conclusion that no reasonable IJ could have reached the same result on this record.

Instead, the Court concludes that the bond hearing was constitutionally deficient on a separate ground: the failure to consider alternatives to detention. Several sessions of this Court, including this one, have concluded that due process requires an IJ to conduct an individualized assessment of whether conditions of release can adequately address any flight risk or danger concerns. See Milhomem v. Wesling, No. CV 26-13292-NMG, 2026 WL 2427591 at *2 (D. Mass. Aug. 18, 2026); Medina De Oliveira v. Moniz, No. 26-CV-12598-PBS, 2026 WL 2110773, at *2 (D. Mass. July 22, 2026); Costa v. McDonald, No. 25-CV-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026) (collecting cases from other districts). But see Mijangos v. Wesling, No. CV 26-12628-WGY, 2026 WL 2838413 at *1 (D. Mass.

---

[1] The Court notes that the IJ mischaracterized petitioner's occupation when she stated that he "drives for Amazon," when, in fact, as the record reflects, petitioner works for a separate company that installs audio and visual systems in Amazon fulfillment centers nationwide.

Sept. 22, 2026) (agreeing, in principle, that IJ must consider alternatives in detention, but disagreeing that such consideration requires express findings made by IJ absent guidance from First Circuit Court of Appeals).

Here, the record makes clear that the IJ denied bond without addressing whether any alternative to detention could mitigate the risk of flight. Petitioner presented substantial evidence of his ties to the community, lawful employment, a sponsor willing to ensure his court attendance and a history of compliance with immigration requirements. Notwithstanding that evidence, the IJ did not explain why conditions of release were insufficient to address any flight risk concern. Although the IJ "need not discuss ad nauseam every piece of evidence," the logic of her reasoning must be clear from the record. See Mayancela Mayancela v. FCI Berlin, Warden, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025) (quoting López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025)). The absence of any consideration of alternatives to detention renders the bond hearing constitutionally inadequate.

Accordingly, the Court concludes that the bond hearing for petitioner did not comport with due process.

3. Remedy

Having concluded that petitioner was not afforded a constitutionally adequate bond hearing, the Court now considers

an appropriate remedy for petitioner. Federal courts have broad discretion and flexibility in granting specific habeas relief. See U.S. v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (noting that, in the context of §2255, "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy").

Here, petitioner requests as a remedy his immediate release or, alternatively, release subject to conditions set by the Court as an alternative to detention. Under the circumstances, however, the proper remedy is neither immediate release nor release contingent on conditions imposed by this Court but rather a constitutionally adequate bond hearing at which the IJ considers alternatives to detention in the first instance.

**ORDER**

For the foregoing reasons, the petition for writ of habeas corpus (Docket No. 1) is **ALLOWED**, in part, and **DENIED**, in part.

The Court directs that the petitioner, Jerges Enrique Delepiani Olivero, is to be released within 14 days of the date of this order unless he is afforded a bond hearing that complies with all constitutional requirements, including but not limited to the requirement that the Immigration Judge consider

alternatives to detention. Respondents shall not retaliate against petitioner, at the bond hearing or otherwise, for filing this petition.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 30, 2026